**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MID-AMERICA AG NETWORK, INC., a Kansas Corporation, </br></br>    Plaintiff,</br></br>v.</br></br>MONKEY ISLAND DEVELOPMENT AUTHORITY, an Oklahoma public trust,</br></br>    Defendant. | )</br>)</br>)</br>)</br>)</br>)</br>)</br>)  Case No. 02-CV-105-EA (C)</br>)</br>)</br>)</br>)</br>) |

**SUPPLEMENTAL BRIEF IN SUPPORT OF FEDERAL AVIATION
ADMINISTRATION'S MOTION TO VACATE MARSHAL'S SALE**

COMES NOW, the Federal Aviation Administration ("FAA"), by and through David E. O'Meilia, United States Attorney for the Northern District of Oklahoma, and Cathryn McClanahan, Assistant United States Attorney, and submits this Supplemental Brief in Support of Federal Aviation Administration's Motion to Vacate Marshal's Sale (Dkt. #81), filed May 11, 2005.

This action commenced as a lease dispute between the Plaintiff, Mid-America Ag Network, Inc. (hereinafter "MAAN") and Defendant, Monkey Island Development Authority (hereinafter "MIDA"). The matter was tried to the Court and, ultimately, an order was issued in favor of MAAN, which would continue to be a lessee of MIDA. Findings of Fact and Conclusions of Law (Dkt. #49); Judgment (Dkt. #50). Although MAAN recovered only declaratory relief through the underlying action, MAAN did receive a judgment in the amount of accrued attorneys fees. Judgment (Dkt. #61); Judgment (Dkt. #70). In order to

recover on that judgment, MAAN requested and received a general execution order and requested the sale of certain property of MIDA, currently used as an airport. Order of Sale (Dkt. #71).

The FAA entered a special appearance to request that the Marshal's Sale of the airport property be vacated. Special Appearance and Motion to Vacate Marshal's Sale (Dkt. #81). The FAA argued that the Marshal's Sale was not allowed under certain grant assurances associated with the grant of monies made to MIDA (and Delaware County) to purchase the property in question. *See* Exhibits A and B, attached to Dkt. #81. The major grant assurances are given statutory authority and recited at 49 U.S.C. § 47107. The FAA argued that an equitable lien had attached in favor of the United States that was superior to MAAN's order of execution. The FAA also argued that 49 U.S.C. § 47111(f) gave the Court authority to issue any order that prevented violation of statute or grant assurance.

A hearing was held regarding the FAA's motion before the U.S. Magistrate Judge on May 17, 2005. Minute Order (Dkt. #87). Thereafter, the Court delayed the sale to allow for additional briefing (Dkt. #91). The United States incorporates all arguments presented in its motion to vacate the Marshal's sale (Dkt. #81). This supplemental brief is only intended to address additional issues identified by the Court or raised by the parties during the May 17, 2005, hearing.

**I.      The motion to vacate is sufficient to invoke jurisdiction pursuant to 49 U.S.C. § 47111(f); however, the Secretary has now filed a separate enforcement action.**

In 1994, Congress enacted the Federal Aviation Administration Authorization Act,

Pub. L. 103-305, 108 Stat. 1569, August 23, 1994, where it provided at Section 211(b), 108 Stat. 1575:

> JUDICIAL ENFORCEMENT – For any violation of this chapter (49 U.S.C. § 47101,et seq.) or any grant assurance made under this chapter, the Secretary may apply to the district court of the United States for any district in which the violation occurred, for enforcement.  Such court shall have jurisdiction to enforce obedience thereto by a writ of injunction or other process, mandatory or otherwise, restraining any person from further violations.

49 U.S.C § 47111(f).

The plain language of § 47111(f) does not require a separate action be commenced by the Secretary to enforce grant assurances and the attendant statutes.  That particular section allows the Secretary to "apply" to the District Court for a writ or other process, mandatory or otherwise.  49 U.S.C. § 47111(f).  In this case, the Secretary exercised his authority to seek the enforcement referenced in § 47111(f) by filing a motion to vacate the impending Marshal's sale.

By way of analogy, Federal Rule of Civil Procedure 37(a) reads:  "A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery . . . ."  The title of that particular section is "Motion for Order Compelling Disclosure or Discovery."  *Id.*  It is clear that when a party "may apply," that action is taken in the form of a motion for relief, not a separate and independent action.  Likewise, § 47111(f) allows the Secretary to "apply" to the district court whenever a violation of statute or grant assurances is identified.  In the instant case, application was accordingly effected by motion.

While the United States believes that its motion in this action is sufficient to invoke the grant of jurisdiction under § 47111(f), the Secretary has filed a separate affirmative, civil action to specifically and independently invoke jurisdiction thereunder. The action has been commenced by the Secretary of Transportation against all parties to this action as well as the parties involved in another lawsuit possibly involving the airport property (*Staten, et al. v. Delaware Co., et al.*, No. 04-CV-504-E (N.D. Okla.)). A copy of the Secretary's petition is attached hereto as Exhibit 1.

## II.   The grant of jurisdiction within 49 U.S.C. § 47111(f) is sufficient to reach all parties in this action.

At the hearing held on May 17, 2005, MAAN argued that it was never a party to grant assurances and should not be subject to the assurances given by MIDA respecting the airport. The plain language of § 47111(f) does not, however, limit its reach to grant sponsors. Rather, that section expressly gives this Court the authority to address any violation of statutes *or* any violation of grant assurances made pursuant to statute. It specifically grants the Court jurisdiction to restrain "any person" from further violation.

In construing the terms of a statute, statutory text is accorded its ordinary meaning by reference to the "specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). When the statutory language is plain and unambiguous, "judicial inquiry is complete, except in rare and exceptional circumstances." *Rubin v. United States*, 449 U.S. 424, 430 (1981) (internal quotations and citations omitted); *see also Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438,

450 (2002). One court considering a different statute which utilizes the term "any person" observed: "There is nothing ambiguous about the term 'any person.'" *Mullane v. Chambers*, 333 F.3d 322, 331 (1st Cir. 2003). Just as with the statute in *Mullane*, within § 47111 "Congress chose the broadest possible term . . . and did not qualify the term in any way." *Id.*

### III. MAAN had knowledge of the FAA-MIDA grant assurances and the statutory incorporation of grant assurances since the inception of this litigation.

MAAN raised the issue of the FAA's failure to file the Grant Agreement to place all parties on notice of grant assurances which encumber the airport property. At the hearing on May 17, 2005, MAAN chided the United States for failing to give notice of the Grant Agreement and related grant assurances. Yet, it is evident by review of the materials filed in this case that MAAN had *actual* knowledge of MIDA's obligations to the FAA as well as the assurances that emanate from the FAA's grant program.

On July 17, 2002, in this case, MIDA submitted an Answer and specifically recognized the FAA Grant Agreement. *See* Answer and Counterclaim, filed July 17, 2002, at ¶ 4, 14 and 15 (Dkt. #10). The very lease that commenced the relationship between MIDA and MAAN discusses the FAA grants and makes note of the FAA's continuing interest in the Airport property. *See* Exhibit B to Plaintiff's Motion for Summary Judgment (Dkt. #14) at pp. 1, ¶ 3.1; 4.2; 44.1; 44.2; 44.3; 44.4; 44.5. As a matter of fact, the lease between MAAN and MIDA (which was at the heart of this underlying litigation) was apparently *subject to* the FAA Grant Agreement, which would give MAAN direct knowledge of that

Grant Agreement from the inception of the lease agreement. *See* Dkt. #10 at ¶ 14, 15.

Perhaps most telling, however, is MAAN's filing with the Court on February 7, 2003. Therein, MAAN discussed and argued the impact of grant assurances on this litigation. Plaintiff's Trial Brief (Dkt. #39) at pp. 7-10. MAAN argued the grant assurances and the administrative procedures prescribed therein for lease disputes *for its own benefit*. *Id*. MAAN attached legal research to its brief indicating a LEXIS search for the terms "federal aviation administration" and "grant assurances." Dkt. #39 at Exhibit A. Now that MAAN finds the grant assurances and the surrounding law inconvenient to its plan to *sell* the airport properties, it cannot argue lack of notice.

At the May 17, 2005, hearing, the Court expressed concern about notice in general and the desirability of filing the Grant Agreements of record. The Court raised valid points; however, in this case, the parties (including MAAN) had specific and actual notice, as admitted in their filings with this Court, well before any money judgment was even entered (let alone executed upon).

**IV.    The fact that the attorney fee judgment against MIDA may be difficult to collect is no justification to overlook controlling law.**

It is an unfortunate fact that even creditors armed with lawful claims or judgments may not be able to actually collect their damages. Defunct, bankrupt or immune debtors or defendants can frustrate otherwise lawful claims. Nonetheless, the courts consistently recognize an obligation to follow the law. *Royal Bank Export Finance Co., Ltd. v. Sheller*,

6

1994 WL 689783 (4th Cir.)[1] (even where Plaintiff determined that it would be unable to collect its judgment against a defunct corporation, Court had to apply law and grant summary judgment against Plaintiff in subsequent action to collect from individuals and corporation which bought the defunct corporation). *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1499 (9th Cir. 1991) (where no relief could be fashioned because of sovereign immunity issues, court was sympathetic, but could not avoid the rules of law); *Lowell Staats Min. Co., Inc. V. Philadelphia Elec. Co.*, 878 F.2d 1271, 1273 (10th Cir. 1989) (even where Plaintiff was unable to collect on a lawful judgment, Court was compelled to follow the law and dismiss action against parties associated with judgment debtor).

In this case, MAAN has complained that there is no way to satisfy its judgment against MIDA other than by execution against and sale of the airport property. Even if that were true, the Court would be obliged to follow the applicable law. Importantly, however, MAAN's counsel's conclusory remarks are not supported by evidence in this case. In fact, the underlying action here resulted in a finding by the Court that the MAAN – the judgment *creditor* – could continue to lease property from and *owe* yearly lease payments *to* MIDA – the judgment *debtor*. Findings of Fact and Conclusions of Law (Dkt. #49) at pp. 1-2, 17. It would seem that MAAN could, at the very least, explore options of offset.

**V.     The equitable lien theory and public policy at stake here justify the Court's exercise of equitable powers to stop the proposed sale of the airport.**

In 1982, Congress enacted the Airport and Airway Improvement Act of 1982, Title

---

[1]Unpublished case law is attached hereto as Exhibit 2.

V., Pub. L. 97-248, 96 Stat. 671, September 3, 1982, declaring the safe operation of the airport and airway system to be the "highest aviation priority" and further declaring that "all airport and airway programs should be administered in a manner consistent with the provisions of . . . Federal Aviation Act of 1958, with due regard for the goals expressed therein of fostering competition, preventing unfair methods of competition in air transportation, maintaining essential air transportation, and preventing unjust and discriminatory practices." Pub. L. 97-248, Section 502(a). The manifested Congressional purposes in legislating the airport grant program (i.e., to keep the airport open for public use, to ensure no exclusive rights or uses by any single person or entity, to foster competition preventing unfair methods of competition, and preventing unjust and discriminatory practices) will be frustrated if a forced sale of the airport to satisfy MIDA's indebtedness to MAAN is allowed to proceed.

Because of the overwhelming public interest in the airport and the Congressional expression manifested in the FAA's airport improvement program, the Court should exercise it's equitable power granted by § 47111(f) and vacate the sale of the Airport. Where public interest is involved in a proceeding, the district court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. *Porter v. Warner Holding Co.*, 328 U.S. 395, 397-398 (1946); *see also General Telephone Co. of the Northwest, Inc. v. E.E.O.C.*, 446 US 318, 326 (1980) (allowing an agency to rely on judicial enforcement where "the overriding public interest" is involved).

The FAA is mindful of the Court's reluctance to exercise its equitable powers to enjoin an ostensibly lawful activity. But, where necessary and appropriate in the public interest to correct or dissipate the effects of unlawful conduct—as expressed by Congress in granting the Secretary the right to seek judicial enforcement—it is proper for the Court to do so. *See Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 961 (10th Cir. 2002) (enjoining a lawful practice to correct the "evil effects" of past unlawful employment practices); *see also United States v. Loew's, Inc.,* 371 U.S. 38, 53 (1962) ("Some of the practices which the Government seeks to have enjoined with its requested modifications are acts which may be entirely proper when viewed alone. To ensure, however, that relief is effectual, otherwise permissible practices connected with the acts found to be illegal must sometimes be enjoined."); *United States v. Holtzman*, 762 F.2d 720, 724 (9th Cir. 1985).

In the instant case, the public would not be faced with the loss of its investment or the use of a public airport but for the conduct of MIDA in leasing, mortgaging, and encumbering the airport without FAA knowledge, contrary to grant assurances. While MIDA's obligations in this regard may be considered contractual, its contracts with the Government cannot be viewed in the same manner as a bilateral contract governing a discrete transaction. Unlike normal contractual undertakings, federal grant programs originate and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy. *Bennett v. Kentucky Dep't of Education*, 470 U.S. 656, 669 (1985). There are specific instructions related to the disposition of airport property obtained by grant at 49 C.F.R. § 18.31(c). Although MAAN's forced sale of the airport might otherwise be viewed

9

as lawful, it is an impermissible act under 49 U.S.C. § 47101.  The forced sale must be enjoined to protect the public interest and fulfill the express intent of Congress.

    Respectfully submitted,

    DAVID E. O'MEILIA
    United States Attorney


    /s/Cathryn D. McClanahan
    CATHRYN D. MCCLANAHAN, OBA #14853
    Assistant United States Attorney
    110 West 7th Street, Suite 300
    Tulsa, Oklahoma 74119-1029
    Telephone (918) 382-2700
    Facsimile (918) 560-7939

OF COUNSEL:
ERIC E. ANDERSON
LORETTA BARLOW
Office of General Counsel
Federal Aviation Administration
2601 Meacham Blvd., Room 663
Forth Worth, Texas 76137
Telephone (817) 222-5078

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2005, I electronically transmitted the foregoing SUPPLEMENTAL BRIEF IN SUPPORT OF FEDERAL AVIATION ADMINISTRATION'S MOTION TO VACATE MARSHAL'S SALE to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kenneth M. Smith
ksmith@riggsabney.com
Attorney for Plaintiff

Robert P. Skeith
Rskeith@riggsabney.com
Attorney for Plaintiff

Kevin Behrens
kevin_behrens@oag.state.ok.us

Evan B. Gatewood
Egatewood@hmglawyers.com

I hereby certify that on May 31, 2005, I served the foregoing SUPPLEMENTAL BRIEF IN SUPPORT OF FEDERAL AVIATION ADMINISTRATION'S MOTION TO VACATE MARSHAL'S SALE by mail, proper postage paid, on the following who are not registered participants of the ECF System:

Michael C. Turpen
Riggs, Abney, Neal, Turpen, Orbison & Lewis
Paragon Building, Suite 101
5801 Broadway Extension
Oklahoma City, Oklahoma 73118-7489
Attorney for Plaintiff

David L. Crutchfield
56558 East Highway 125
Monkey Island, Oklahoma 74331
Attorney for Defendant

/s/Carie McWilliams
CARIE MCWILLIAMS
Legal Assistant