# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MID-AMERICA AG NETWORK,** | ) | |
| **INC., a Kansas Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 02-CV-105-CVE-PJC** |
| | ) | |
| **MONKEY ISLAND DEVELOPMENT** | ) | |
| **AUTHORITY, an Oklahoma public trust,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### UNITED STATES' HEARING BRIEF

Respectfully submitted,

DAVID E. O'MEILIA
UNITED STATES ATTORNEY

CATHRYN D. MCCLANAHAN, OBA #14853
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119-1029
Telephone (918) 382-2700
Facsimile (918) 560-7939

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      Contrary to Mr. Staten's argument, the filing of a deed which purports to
        remove all legal and equitable interests of MIDA in the subject property
        DOES impact the ability of the Court to order the Marshal's sale . . . . . . . . . . . . . . . . . .1

II.     49 U.S.C. § 47111 does apply to MAAN and to Mr. Staten and the assistance
        sought by the Secretary here can be enforceable against them . . . . . . . . . . . . . . . . . . . . .3

        A.      Section 47111 allows the court to enforce obedience regarding any
                Grant Assurance as against "any person." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      MAAN and Mr. Staten explicitly and voluntarily subjected themselves
                to all Grant Assurances years ago . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.      To the extent any operation of state law would frustrate the operation
                of the provisions of Title 49 of the United States Code at Chapter 471,
                Sections 47101, et seq., the doctrine of preemption applies . . . . . . . . . . . . . . . .8

        D.      Section 47111(f) - and its proposed application in this case - is a
                constitutional exercise of the Necessary and Proper Clause . . . . . . . . . . . . . . . .10

III.    An equitable lien in favor of the FAA exists and should be recognized by this
        Court.  The existence of that lien makes the proposed sale of the property unjust
        and impracticable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.      Oklahoma recognizes equitable liens where property was dedicated in
                favor of a certain party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        B.      Cases specifically involving FAA Grants support the argument that an
                equitable lien arose in favor of the FAA upon the signing of the Grant
                Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

        C.      There are other cases involving federal government grants which also
                support the existence of an equitable lien based upon the understandings
                behind those grants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

        D.      Oklahoma law is particularly inclined to grant an equitable lien where
                the one claiming the lien provided the purchase money for the property
                in question . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

E.      An equitable lien relates back in time to the date it was created between
        two parties.  Consequently, the FAA's lien is superior to any judgment
        lien of MAAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

F.      The Grant Agreement represents a covenant enforceable against all parties,
        which should be recognized by this Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

American Products Co., Inc. v. Mangless, 387 F. Supp. 744 (E.D. Okla. 1974) . . . . . . . . . . . . 13

Four T's, Inc. v. Little Rock Municipal Airport Commission, 108 F.3d 909 (8th Cir. 1997) . . . 4

Freeman v. Alderson, 119 U.S. 185 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Hanna v. Plumer, 380 U.S. 460, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965) . . . . . . . . . . . . . . . . . . 13

Hodel v. Virginia Surface Mining & Reclamation Association, Inc.,
      452 U.S. 264, 101 S. Ct. 2352, 69 L. Ed. 2d 1 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Joliet-Will County Community Action Agency, 847 F.2d 430 (7th Cir. 1988) . . . . . . . . . 16

Lacks v. Fahmi, 623 F.2d 254 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579 (1819) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Miree v. United States, 433 U.S. 25 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

New York Airlines, Inc. v. Dukes County, 623 F. Supp. 1435 (D. Mass. 1985) . . . . . . . . . . . . . 4

Palmiter v. Action, Inc., 548 F. Supp. 1166 (N.D. Ind. 1982),
      aff'd, 733 F.2d 124 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Pittsburg County Rural Water District No. 7 v. City of McAlester,
      358 F.3d 694 (10th Cir. 2004), cert. denied, 125 S. Ct. 44 (2004) . . . . . . . . . . . . . 8, 9, 10

In re Premier Airways, Inc., 303 B.R. 295 (W.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sabri v. United States, 541 U.S. 600, 124 S. Ct. 1941 (2004) . . . . . . . . . . . . . . . . . . . . . . . 11, 13

South Dakota v. Dole, 483 U.S. 203 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Southwest Pipe Line Co. v. Empire Natural Gas Co., 33 F.2d 248 (8th Cir (Okla.) 1929) . . . . 20

United States v. Akers, 785 F.2d 814 (9th Cir.1986), cert.denied, 479 U.S. 828 (1986) . . . . . . . 5

United States v. Lipscomb, 299 F.3d 303 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Miami University, 294 F.3d 797 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 5, 7, 8

United States v. Sabri, 326 F.3d 937   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Westmoreland Human Opportunuties, Inc. v. Walsh, 246 F.3d 233 (3d Cir. 2001)   . . . . . . 16, 17

## STATE CASES

Anderson v. Barr, 62 P.2d 1242 (Okla. 1936)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Blackard v. Good, 248 P.2d 596 (Okla. 1952)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Bredy v. Cantrell, 234 P.2d 381 (Okla. 1951)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

City of New Haven v. Town of East Haven, 402 A.2d 345 (Conn. Super. 1977),
      adopted, 419 A.2d 349 (Conn. 1979)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Clark v. Armstrong & Murphy, 72 P.2d 362 (Okla. 1937)   . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Dearing v. State, 808 P.2d 661 (Okla. 1991)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

First National Bank and Trust of Vinita v. Kissee, 859 P.2d 502 (Okla. 1993)   . . . . . . . . . . . . . 3

Frey v. Poynor, 369 P.2d 168 (Okla. 1962)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Goldenstern v. Gavin, 102 P.2d 582 (Okla. 1940)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Heimann v. Adee, 924 P.2d 1352 (N.M. 1996)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

McNeal v. Baker, 274 P. 655 (Okla. 1928)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Morton v. Clearview Homes, Inc., 324 P.2d 543 (Okla. 1958)   . . . . . . . . . . . . . . . . . . . . . . . 21

Sarkeys v. Russell, 309 P.2d 723 (Okla. 1957)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Southwest Petroleum Co. v. Logan, 71 P.2d 759 (Okla. 1937)   . . . . . . . . . . . . . . . . . . . . . . . 21

T.J.K. v. N.B., 237 So. 2d 592 (Fla. App. 1970)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States Mortgage v. Laubach, 73 P.3d 887 (Okla. 2003)   . . . . . . . . . . . . . . . . . . . . . . . . 2

### FEDERAL STATUTES

1970 U.S.C.C.A.N. 3047, 3069-71 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1982 U.S.C.C.A.N. 842, 1113, 1472-76 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1987 U.S.C.C.A.N. 2601, 2613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1987 U.S.C.C.A.N. 2630, 2637 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

49 U.S.C. §47101,et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

49 U.S.C. § 47111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

49 U.S.C. § 47111(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7 U.S.C. § 1926(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

### LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 97-760 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

H.R. Conf. Rep. No. 100-484 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

H.R. Rep. No. 91- 601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

H.R. Rep. No. 100- 123(II) (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

### CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8 cl 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

### OTHER AUTHORITIES

Amendments to the AADA, Pub. L. 94-353, 90 Stat. 871 (1976) . . . . . . . . . . . . . . . . . . . . . . 4

American Jurisprudence (Second Edition) Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
        19

Fed. R. Civ. P. 69(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Federal Aviation Administration Authorization Act, Pub. L. 103-305, 108 Stat. 1569
        August 23, 1994 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

v

1 Laurence H. Tribe, American Constitutional Law (3d ed. 2000) . . . . . . . . . . . . . . . . . . . . . . . 10

10 AmJurProof of Facts 2d 285 - Equitable Relief from Execution (Apr. 2005)  . . . . . . . . . . . 13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MID-AMERICA AG NETWORK, | ) | |
| INC., a Kansas Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 02-CV-105-CVE-PJC** |
| | ) | |
| MONKEY ISLAND DEVELOPMENT | ) | |
| AUTHORITY, an Oklahoma public trust, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' HEARING BRIEF**

COMES NOW, the Federal Aviation Administration ("FAA"), by and through David E.

O'Meilia, United States Attorney for the Northern District of Oklahoma and Cathryn McClanahan,

Assistant United States Attorney, and submits the following brief and shows the Court as follows:

**I.      Contrary to Mr. Staten's argument, the filing of a deed which purports to remove all
         legal and equitable interests of MIDA in the subject property DOES impact the ability
         of the Court to order the Marshal's sale.**

Oklahoma's "long established" law is that "the purchaser at a sheriff's sale is not an innocent

purchaser." Sarkeys v. Russell, 309 P.2d 723, 726 (Okla. 1957). That case involved a judgment

rendered in the Northern District of Oklahoma federal district court against defendant Russell. The

federal plaintiff (Mid Continent Petroleum Corp.) then executed against certain property of the

defendant and a sale by the U.S. Marshal sale resulted, with the successful bidder being Sarkeys.

A third-party claimant to the land brought an action after the sale to claim some right or title in the

land. In considering the claim, the Oklahoma Supreme Court stated: "[T]he **[purchaser at the**

**Marshal's sale] takes only such interest as the judgment debtor possessed; so that if the**

**judgment debtor has nothing, the purchaser acquires nothing.**" Id. (emphasis added) (citing

1

Goldenstern v. Gavin, 102 P.2d 582 (Okla. 1940)).

Here, the Notice of Sale represents that the Marshal will hold for sale the equity of the judgment debtor, Monkey Island Development Authority ("MIDA").  If the judgment debtor has no equity left and the court becomes aware of this fact, any attempt to push the sale forward is simply urging the court to sell nothing.  Of course, as in the Russell case, it is one situation to find out that the debtor had no interest after the sale and only in the midst of a later, separate state court action; here, the court has been made aware that the debtor "has nothing" so far as equity in the property at issue and, consequently, the "purchaser [will] acquire[] nothing" at the Marshal's Sale.  Id.

In Mr. Staten's rebuttal pleading (filed June 30, 2005) to the FAA's announcement to the court that the property had been deeded to him, he cites to several cases which stand for the proposition that a judgment in rem follows the property and not the equity of the debtor.  No case cited by Mr. Staten involved a general execution Order, such as was issued in this case.  In the Dearing v. State, 808 P.2d 661 (Okla. 1991) case, the court was faced with the state having instituted proceedings to sell land for payment of a tax lien.  That proceeding – a tax foreclosure sale – does proceed directly against the property.  In the Anderson case, also cited by Mr. Staten, two mortgages were being foreclosed.  Anderson v. Barr, 62 P.2d 1242 (Okla. 1936).  And in that case, the court actually went on to discuss the very special nature of mortgages in our economy and the special interest created by mortgages: "A mortgage on real estate creates in the mortgagee a vested property right in the premises, the value of which is in proportion to the amount which the mortgage bears to the value of the real estate . . . ."  Id. at 1242 (syllabus by court).  Finally, the United States Mortgage case cited by Mr. Staten also had to do with a lien foreclosure and whether older judgment liens were subject to certain dormancy statutes.  United States Mortgage v. Laubach, 73 P.3d 887

(Okla. 2003).

There is an important difference between a general execution order and a mortgage foreclosure action.  New Mexico's Supreme Court cautioned parties against equating the two supplementary proceedings (execution in aid of judgment versus foreclosure on a mortgage or note).  Heimann v. Adee, 924 P.2d 1352, 1356 (N.M. 1996).  There is certainly authority which suggests that a general execution judgment is an *in personam* judgment and not *in rem*.  The U.S. Supreme Court states that an "execution" which is "general in its direction" and which "command[s] the sheriff to make the costs out of any property of the defendant" is one that "**must . . . be treated as a judgment *in personam* . . . .**"  Freeman v. Alderson, 119 U.S. 185, 190 (1886)(emphasis added).  Oklahoma cases support that position.  First Nat'l Bank and Trust of Vinita v. Kissee, 859 P.2d 502, 505 (Okla. 1993) (award of fees and costs is an *in personam* judgment); McNeal v. Baker, 274 P. 655 (Okla. 1928) (*in personam* judgment allows general execution, judgment *in rem* is "confined to the proceeds arising out of the sale of the mortgaged property."); see also, T.J.K. v. N.B., 237 So. 2d 592, 594 (Fla. App. 1970) (*in personam* judgment allows for general execution; *in rem* judgment imposes no personal liability).

**II.      49 U.S.C. § 47111 does apply to MAAN and to Mr. Staten and the assistance sought by the Secretary here can be enforceable against them.**

> **A.      Section 47111 allows the court to enforce obedience regarding any Grant Assurance as against "any person."**

The Airport Improvement Program is authorized by Title 49 of the United States Code at Chapter 471, Sections 47101 et seq.  A review of section 47107, the statutory scheme of which it is a part, and the legislative histories of this series of enactments suggests that the grant assurance provisions were designed to ensure the continued existence of an efficient, competitive, national air

transport system.  See H.R.Rep. No. 100- 123(II), at 13 (1987), reproduced in 1987 U.S.C.C.A.N.

2601, 2613; H.R. Conf. Rep. No. 100-484, at 62 (1987), reproduced in 1987 U.S.C.C.A.N. 2630,

2637; H.R. Conf. Rep. No. 97-760, at 383, 710-14 (1982), reproduced in 1982 U.S.C.C.A.N. 842,

1113, 1472-76; Amendments to the AADA, Pub.L. 94-353, §§ 8(h), 10(b)-(c), 90 Stat. 871, 877,

878-79 (1976); H.R.Rep. No. 91- 601, Tit. I, §§ 16-19, reproduced in 1970 U.S.C.C.A.N. 3047,

3069-71; see also Four T's, Inc. v. Little Rock Mun. Airport Comm'n, 108 F.3d 909, 915-16 (8th Cir.

1997) (no private right of action under AAIA for private parties); New York Airlines, Inc. v. Dukes

County, 623 F. Supp. 1435, 1446-47 (D. Mass. 1985) (air carriers were the intended beneficiaries

of the airport improvement acts).  As indicated in the title of Section 47107, "Project grant

application approval conditioned on assurances about airport operations," the Grant Assurances are

an essential and binding element of Federal law under Title 49.

In 1994, Congress enacted the Federal Aviation Administration Authorization Act, Pub. L.

103-305, 108 Stat. 1569, August 23, 1994, where it provided at Section 211(b), 108 Stat. 1575:

> JUDICIAL ENFORCEMENT – For any violation of this chapter (49 U.S.C. §
> 47101,et seq.) or any grant assurance made under this chapter, the Secretary may
> apply to the district court of the United States for any district in which the violation
> occurred, for enforcement.  Such court shall have jurisdiction to enforce obedience
> thereto by a writ of injunction or other process, mandatory or otherwise, restraining
> any person from further violations.

49 U.S.C § 47111(f).

The plain language of § 47111(f) allows the Secretary to "apply" to the District Court for a

writ or other process, mandatory or otherwise.  49 U.S.C. § 47111(f).  In this case, the Secretary

exercised his authority to seek the enforcement referenced in § 47111(f) by filing a motion to vacate

the impending Marshal's sale.  The plain language of that section also allowed the court to enjoin

or restrain "any person," and does not limit itself to sponsors or grantees.

4

Section 47111 authorizes the Secretary to seek injunctive relief.  "As a general matter, a court operates with broad discretion when fashioning equitable relief."  Lacks v. Fahmi, 623 F.2d 254, 256 (2d Cir. 1980) (citation omitted).  "The district court has considerable discretion to fashion appropriate injunctive relief, particularly where the public interest is involved."  United States v. Akers, 785 F.2d 814, 823 (9th Cir.1986), cert.denied, 479 U.S. 828 (1986).  Here, the United States has come forward to assert a public interest and the Court undoubtedly has sufficient jurisdiction and discretion to protect that interest.

Mid-America Ag Network's ("MAAN") proposed narrow reading of the remedies envisioned by § 47111 are contrary to well-established law.  When a specific federal interest or right is established by Congress through a statutory grant or loan scheme, the remedies and procedures for enforcement of the interest should not be so narrowly construed as to prevent the effectuation of the policy declared by Congress.  United States v. Miami University, 294 F.3d 797 (6th Cir. 2002).

**B.     MAAN and Mr. Staten explicitly and voluntarily subjected themselves to all Grant Assurances years ago.**

MAAN, in its response to the FAA's pleadings, contends that "MAAN is not a party to the grant assurances which have allegedly been violated" and goes so far as to say that, because it is only a judgment creditor, it "cannot violate" grant assurances.  As an initial matter, Section 47111 clearly uses the term "any person" as being subject to orders granting relief to the Secretary and is not limited to signatories to the original Grant Agreements.

More importantly, MAAN completely ignores the very essence of the fight that was before this court at the inception of this litigation.  This is MAAN's suit to enforce a contract it had entered into with MIDA.  In that very contract, MAAN voluntarily and purposefully agreed to be bound by FAA regulations and by any and all agreements between MIDA and the FAA and the Oklahoma

5

Aeronautics Commission ("OAC"). Consequently, MAAN voluntarily signed its name to a contract, presented it for enforcement right here in this court – which contract referenced (and more than that, made MAAN subject to) the FAA Grant Agreements.

In particular, MAAN executed a Ground Lease and Commercial Facility Agreement with the following provision:

> In addition, the Lessee [MAAN] further **acknowledges and agrees that it shall be subject to the provisions** of all existing or future agreements entered into between the Authority [MIDA] and the FAA or the OAC, and any other governmental agencies to obtain state, federal or other aid for the improvement or operation and maintenance of the Airport. In connection herewith, the parties acknowledge that the Authority has furnished to the Lessee and the Lessee has reviewed copies of all such agreements entered into by the Authority as of the Effective Date of this Agreement, and the Authority agrees to furnish the Lessee with a full, true and exact copy of all such future agreements.

Ground Lease and Commercial Facility Agreement at ¶ 45.1, dated December 1, 1998, attached as Exhibit B to MAAN's Motion for Summary Judgment (Dkt. # 14) (emphasis added).

Mr. Staten entered into a Management Agreement as of March 1, 1996, which contained this provision:

> 4.  FAA Provisions
>
>     (A) Grant Assurances.  Staten shall operate the Airport **in accordance with obligations of MIDA to the United States and Oklahoma government under any grant Agreements which now exist or may hereinafter be entered into by MIDA.**  . . .
>                           * * *
>     (E) Subordination.  This Agreement shall be **subordinate** to the provisions of any existing or future Agreement entered into between MIDA and the United States (including the FAA) or the State of Oklahoma (including the OAC) to obtain federal and/or state aid for the improvement or operation and maintenance of the Airport.

Management Agreement at ¶ 4, attached as part of Exhibit C to MAAN's Motion for Summary Judgment (Dkt. #14) (emphasis added).

6

Despite their acknowledgment and agreement to be subject to the terms of the Grant Agreements, MAAN (and Mr. Staten) have disregarded the explicit terms therein. Specifically, the Grant Assurances (which are a part of the Grant Agreements) required that land not be sold, leased, encumbered or otherwise transferred or disposed of without prior approval by the Secretary. Grant Assurances, attached to United States' Motion to Vacate Marshal's Sale at Exhibit A ("Grant Assurances") at ¶ 5(b). This Grant Assurance requirement is emphasized in FAA Order 5190.6A (hereafter "Order"), which provides the policies and procedures to be followed in carrying out the Federal Aviation Administration's ("FAA") functions related to airport compliance. As stated in section 7-18, "All land described in a project application and shown on an Exhibit A constitutes the airport property obligated for compliance under the terms and covenants of a grant agreement. A sponsor is obligated to obtain FAA consent to delete any land so described and shown. FAA consent shall be granted only if it is determined that the property is not needed for present or foreseeable public airport purposes."

Even though the sponsors could arrange for an outside person (such as Mr. Staten) to manage and operate the airport, the Grant Assurances compelled the sponsors to reserve all rights to ensure compliance with the Grant Agreement. Grant Assurances at ¶ C.5(f). The sponsors apparently intended to comply with that provision when they extracted a promise from Mr. Staten to be bound by the Grant Agreements. Importantly, any construction or development was subject to plan, specifications and schedules approved by the Secretary. Id. at ¶ C.16, C.17. The Agreement bound the parties to "not cause or permit any activity or action [on the property] which would interfere with its use for airport purposes." Id. at ¶ C.19. There were to be no alterations or revisions to the airport layout plan without the approval of the Secretary. Id. at ¶ C.29. So far as the duration of the

obligation to follow these Grant Assurances, the agreement clearly stated "there shall be no limit on the duration of the assurance against exclusive right or the terms, conditions and assurances with respect to real property acquired with Federal funds."  Id. at ¶ B.1.

The Grant Agreement – to which MAAN voluntarily agreed to be bound – strictly limited the time and manner in which the land could be alienated.  Id. at ¶ C.31.  Only when certain criteria were satisfied could the land be disposed of – and then a right of repayment to the Secretary was specifically set out in the Grant Agreement.  Id.  Rather than at least recognizing and reciting the provisions which related to repayment of the Secretary, which MAAN had agreed to acknowledge and enforce in their lease agreement, MAAN drafted a General Execution Order and Notice of Sale to attempt to obliterate any future rights of the Secretary or even repayment of grant monies.

> **C.     To the extent any operation of state law would frustrate the operation of the provisions of Title 49 of the United States Code at Chapter 471, Sections 47101 et seq., the doctrine of preemption applies.**

Particularly instructive to a number of issues in this case is the recent Tenth Circuit opinion of Pittsburg County Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694 (10th Cir. 2004), cert. denied, 125 S. Ct. 44 (2004).  The plaintiff, referred to throughout the opinion as "Pitt-7" was a rural county water association in Oklahoma.  Pitt-7 took advantage of available loans from the U.S. Farmer's Home Administration ("FMHA") in 1967 and entered into a loan agreement.  The particular loan program at issue there was governed by the terms and conditions of 7 U.S.C. § 1926(b).  Section 1926(b) provides that, for an association indebted by a loan to the federal government under the statute, "[t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any

8

private franchise for similar service within such area during the term of the loan."

Pitt-7's territory had included land both inside and outside McAlester's territorial limits. After the Pittsburg County Board of Commissioners entered a Deannexation Order, which would release certain lands from the Pitt-7 area, Pitt-7 filed an action in federal court, alleging violations of the above referenced provisions. After a lengthy course of litigation, the Tenth Circuit considered a district court order that rejected all of Pitt-7's claims. The Court found that Congress had enacted 7 U.S.C. § 1926(b) "as part of a federal statutory scheme to extend loans and grants to certain associations provided . . . water service or management . . . or essential community facilities to farmers, ranchers, and other rural residents." Id., 358 F.3d at 714-15 (quotations omitted; alteration in original). Given Congress' directive, a "broad construction" of the section was justified to "protect[] the financial interests of the United States" and to "promot[e] rural water development." Id., 358 F.3d at 715. Section 1926(b), then, was a valid Congressional mandate and would preempt all state law – such as deannexation – that could have been utilized to encroach on the protections offered Pitt-7 by the statute. Id., 358 F.3d at 715-716.

Importantly, however, Section 1926(b) protection under the FMHA loan program not only reached the deannexation action of the Board, but also applied to the City of McAlester's conduct in selling water to customers in the newly deannexed lands. McAlester had argued that the deannexation order was a bar to any liability on their part. If this additional protection – that is, remedial action that reached even the City of McAlester's conduct -- was denied, the Tenth Circuit rightly recognized that the Congressional mandate of the loan program would be frustrated.

The City of McAlester is akin to the judgment creditor in this action. Just as the City of McAlester relied upon a facially valid deannexation order, MAAN obtained a facially valid

9

judgment in this Court.  However, when further action (by either McAlester or MAAN) frustrates a clear and  extensive Congressional loan or grant program to further a public goal, the Court must recognize and enforce the Congressional protection afforded loan or grant recipients.

MAAN's execution powers are derived from state law and procedure.  Fed. R. Civ. P. 69(a).  The Tenth Circuit found, in the above cited case, where the federal protections of a grant or loan program have attached, those protections preempt local or state law that "can be used to justify" any encroachment on the federal protections.  Id., 358 F.3d at 715.  MAAN certainly may have obtained a valid order for fees and costs in this action, but the manner of execution is preempted by the explicit protections of 49 U.S.C. § 47101 et seq.

One last interesting holding by the Tenth Circuit involved the City of McAlester's challenge to the protections of the FMHA's loan program based upon the U.S. Constitution.  McAlester alleged that such extensive protection of a loan program participant would "exceed the scope of the federal Spending Clause power."  Id., 358 F.3d at 716.  The court rejected the argument.

**D.     Section 47111(f) – and  its proposed application in this case – is a constitutional exercise of the Necessary and Proper Clause.**

It is well recognized that Congress may use its spending power to regulate indirectly through the use of conditional grants.  E.g., 1 LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 5-6, at 833 (3d ed. 2000); South Dakota v. Dole, 483 U.S. 203, 207-08 (1987).  However, Section 47111(f) is not a conditional grant – it neither confers money nor does it extract a promise or obligation on the part of a recipient of money.  Rather, Section 47111(f) is an enforcement provision, designed to protect federal interests.  In addition to assigning Congress the spending power, which brings with it the power to condition grants, the Constitution also gives Congress the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution" the

10

powers expressly delegated to the federal government.  U.S. Const. art. I, § 8 cl. 18.  The enforced

protection of Grant Agreements and statutory Grant Assurances is "necessary and proper" **to**

Congress's spending power.

In this manner, Section 47111(f) is not unlike some criminal enforcement provisions that are

tied to federal loan and grant programs.  Title 18 at section 666 addresses bribery or theft concerning

programs that receive federal funding.   A defendant recently alleged the statute was an

unconstitutional extension of the Spending Clause.  United States v. Lipscomb, 299 F.3d 303, 309

(5th Cir. 2002).  The Fifth Circuit noted that the statute, which punished theft or bribery connected

with federal funding programs, did not actually impose any condition on the receipt of federal funds.

Id., 299 F.3d at 320.  Ultimately, the court upheld the criminal proceedings against Lipscomb – who

was not a federal grant or loan recipient himself.

Another Court summarized the issue presented by § 666 as "whether Congress has the

authority to regulate the conduct of individuals, not States, who deal with organizations that receive

federal benefits."  United States v. Sabri, 326 F.3d 937, 949 n. 6 (8th Cir. 2003), aff'd , 541 U.S. 600

(2004).  The court concluded that "the case law demonstrates that funding condition statutes may

only directly regulate the recipients of the federal funds who then may or may not undertake action

vis-a-vis third parties."  Id., 326 F.3d at 947.  Next, the court turned to the Necessary and Proper

Clause and found that it "does, however, allow Congress the luxury to choose from an array of

means with which to **implement** its enumerated powers, including its Spending Power."  Id.

(emphasis added).  Considering the interest of the federal government in the grant program and in

safeguarding the federal investment, the criminal prosecution of a non-party to the original grant

agreement was acceptable and constitutionally valid.  Id.  The Court concluded: "More importantly,

11

were we to conclude that Congress lacked the authority to legislate in this area, then the protection

of federal funds would be left to the whim of state and local officials-perhaps even the same officials

who pose a threat to the integrity of the federal funds in the first place and who therefore possess

a strong disincentive to protect them.  The proposition that the federal government is powerless to

vindicate its own interests is clearly untenable . . . ." Id., 326 F.3d at 951.

In the instant case, Congress has prescribed an avenue of relief that is appropriate under the

Necessary and Proper clause in order to effectuate a Spending Power, already exercised by way of

a grant program.  Here, a much milder enforcement than criminal prosecution is prescribed by

Section 47111 and is surely as appropriate under the Necessary and Proper Clause.  Just as criminal

prosecution of a third-party (not a direct grant recipient) may be appropriate, injunctive relief against

a third-party (not a direct grant recipient) is surely available to the Secretary under the clear

language of § 47111.  Congress has the authority to protect (using the Necessary and Proper Clause)

the federal interests created by the Spending Power and did so with the creation of § 47111.

The Supreme Court affirmed the Eighth Circuit's conclusions, summarizing:

> Congress has authority under the Spending Clause to appropriate
> federal monies to promote the general welfare, Art. I, § 8, cl. 1, and
> it has corresponding authority under the Necessary and Proper
> Clause, Art. I, § 8, cl. 18, to see to it that taxpayer dollars
> appropriated under that power are in fact spent for the general
> welfare, and not frittered away in graft or on projects undermined
> when funds are siphoned off or corrupt public officers are derelict
> about demanding value for dollars.  See generally McCulloch v.
> Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819) (establishing review for
> means-ends rationality under the Necessary and Proper Clause).  See
> also Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.,
> 452 U.S. 264, 276, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (same);
> Hanna v. Plumer, 380 U.S. 460, 472, 85 S.Ct. 1136, 14 L.Ed.2d 8
> (1965) (same).  Congress does not have to sit by and accept the risk
> of operations thwarted by local and state improbity.  See, e.g.,
> McCulloch, supra, at 417 (power to " 'establish post-offices and

12

post-roads' " entails authority to "punish those who steal letters").

<u>Sabri v. United States</u>, 541 U.S. 600, 124 S. Ct. 1941, 1946 (2004).

**III.    An equitable lien in favor of the FAA exists and should be recognized by this Court. The existence of that lien makes the proposed sale of the property unjust and impracticable.**

The Court should cancel the sale based upon the existence of an equitable lien in favor of the United States which strictly curtails the alienation of the subject property and was never recognized in the notice of sale.  "Broadly stated, the courts of equity will interfere by injunction to prevent an execution against property to satisfy a judgment at law, where an execution would be against good conscience." 10 AmJurProof of Facts 2d 285 – Equitable Relief from Execution (Apr. 2005) (footnotes omitted)**.**

**A.    Oklahoma recognizes equitable liens where property was dedicated in favor of a certain party.**

An equitable lien is recognized under Oklahoma law:  "To dedicate property, or to agree to do so, to a particular purpose or debt, is regarded in equity as creating an equitable lien thereon in favor of him for whom such dedication is made." <u>American Products Co., Inc. v. Mangless</u>, 387 F. Supp. 744 (E.D. Okla. 1974).  In <u>Clark v. Armstrong & Murphy</u>, 72 P.2d 362, 364 (Okla. 1937), Oklahoma's Supreme Court pointed out that equitable liens do not depend on possession and are of two kinds:  (1) those implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and circumstances of their dealings, and (2) those that arise from a contract which shows and intention to charge some particular property with a debt or obligation.

These elements are satisfied in this case.  The "dedication" of the property is actually memorialized in writing.  The Grant Agreements show a definite intent on the part of the signatories

13

to place forward-looking restrictions on the management, ownership and use of the property.  See United States' Motion to Vacate Marshal's Sale at Exhibits A & B (Dkt. #81).  The specific and important federal interests are clearly laid out.  Moreover, for a time immediately following the creation Grant Agreements, MIDA and Delaware County acted consistently with this ongoing federal equitable interest.  Delaware County's Resolution concerning the Grant Agreement references the County's desire to abide by and perform all Grant Assurances.  MIDA specifically referenced the Grant and the restrictions therein when it entered into the lease with MAAN – the very subject of the underlying dispute in this matter.

**B.**     **Cases specifically involving FAA Grants support the argument that an equitable lien arose in favor of the FAA upon the signing of the Grant Agreements.**

In In re Premier Airways, Inc., 303 B.R. 295 (W.D.N.Y. 2003), FAA asserted an equitable lien or constructive trust theory; the Court did not reject the fact that an equitable lien arose when a grant agreement was signed between debtor and FAA; the court simply found that the FAA's interest would be lost upon bankruptcy because – like in this case, there was no recorded instrument – but, **unlike** in this case, bankruptcy law says the bankruptcy trustee takes the property of the debtor exactly as if a bona fide purchaser of real estate (that is, free of any unrecorded interest).  No such presumption of a bona fide purchaser eliminates the FAA's interest here.  Premier Airways supports the existence of an equitable lien; the FAA's equitable lien was recognized but impacted by application of particular bankruptcy rules not at all present in this case.

In City of New Haven v. Town of East Haven, 402 A.2d 345, 354 (Conn. Super. 1977), adopted, 419 A.2d 349 (Conn. 1979), the court held that lands which had been purchased with FAA grant monies, memorialized by Grant Agreements, are "certainly impressed with a public trust."  Indeed, the City was "obligated to use this land for airport purposes pursuant to certain grant

14

agreement it entered into with the FAA." Id.  The court found that this arrangement resulted in the City merely "holding" the land for a "public purposed."

One U.S. Supreme Court case, Miree v. United States, 433 U.S. 25, 28-29 (1977), recognized that the operations of the United States "in connection with FAA grants . . . are undoubtedly of considerable magnitude."  That case, however, involved the rights of third-party beneficiaries (private party survivors of crash victims) to sue to enforce the FAA grants.  (Specifically, the plaintiffs contended that the airport operator-sponsor allowed a trash dump operation adjacent to the airport, which attracted swarming birds, which were ingested by the jet engine of an aircraft).  The Court found that such a right was uncertain and that the dispute at hand did not really involve the United States.

In an authoritative journal devoted to air law issues, one author examined the grant program and concluded:  "Airport grant assurances are mandatory, prospective in nature, and describe an affirmative obligation on the airport sponsor with respect to its future actions and policies." Ceruzzi, Leonard A., "Quasi-regulation of a Deregulated Industry by a Safety Agency," 54 J. Air L. & Com. 889, 910 (Summer 1989).

> **C.**     **There are other cases involving federal government grants which also support the existence of an equitable lien based upon the understandings behind those grants.**

In In re Joliet-Will County Community Action Agency, 847 F.2d 430 (7th Cir. 1988), a non-profit community service organization which had been awarded federal grants had subsequently filed bankruptcy.  Federal agencies contended that the estate of the bankrupt had only acquired a limited interest in remaining monies and personal property.  In fact, the grantor agencies maintained that the trustee acquired the debtor's mere possessory interest in the grant funds and the grant

property.  This interest would be subject to the grantor agencies interest, since any application of the funds outside the narrow, specific purposes of the grant would warrant reversion to the grantor agency.

The Seventh Circuit's determination focused upon the terms of the grant and found that the issue was "who owns the money and the personal property bough with it" where a federal grant is concerned. Joliet-Will, 874 F.2d at 433.  The Seventh Circuit held that the grants "constituted Joliet-Will a trustee, custodian, or other intermediary who lacks beneficial title and is merely and agent for the disbursal of funds to another."  Id., 847 F.2d at 432.  In other words, Joliet-Will actually supports more than an equitable lien in favor of the government because the Seventh Circuit found that beneficial reversionary interest resided with the government.

In Westmoreland Human Opportunuties, Inc. v. Walsh, 246 F.3d 233 (3d Cir. 2001), the Department of Housing and Urban Development ("HUD") issued a grant which obligated HUD to provide $1,326,965.00 to the a particular housing project, and committed a particular non-profit to administer those funds at that project site.  The Grant Agreement, which was subject to renewal, carried a three-year term and was scheduled to expire in 1999.  When bankruptcy was filed by the non-profit, its interest in the Supportive Housing Program grant with HUD still had some value.  The Court held that the non-profits interest in the grant with HUD was excluded from the definition of the "property of the estate."  The Third Circuit stated:  "As we see it, a federal agency's retention of pervasive restriction on a grantee's identity and manner of performance under a HUD-type grant program is inconsistent with the grantee's assertion of a property interest in the grant relationship." Id., 246 F.3d at 244.  The Third Circuit specifically held that the limitations imposed by the grant program "**greatly constrict the scope of the rights yielded to the grantee by the terms of the**

**grant arrangement, and substantially (if not completely) restrict their transferability and alienability, thereby effectively rendering the grantee's interest essentially valueless."** Id., 246

F.3d at 245.  The court concluded:

> [W]e are satisfied that if these controls are sufficiently extensive, i.e., if, under the terms of the arrangement between the grantor federal agency and the grantee, the agency retains strict, pervasive, and minute oversight over the identity of the grant recipient and the manner of that recipient's performance, the existence of such controls can demonstrate that the federal grantor agency's interest in ensuring the effective administration of that program is weighty enough to exclude the grantee's interest from § 541's property definition.

Id., 246 F.3d at 244.

While MAAN points out that MIDA's Grant Agreement now concerns property and not cash, the principles of the Westmoreland case (and its implications here) cannot be so easily dismissed. The Circuit Court found that the government grant program which envisioned future oversight of the asset – including who was controlling the asset and how it was managed – signified the existence of a weighty federal interest that could not be ignored.  In fact, the Circuit Court went so far as to say the grantee's interest was "essentially valueless" if the agency retained such forward-looking oversight regarding the asset.  While MAAN asserts that Westmoreland only controls if the grant is a cash money grant, the case actually turns on the fact that a federal agency exercises (or reserves rights to exercise) extensive future control over the object of the grant.  In that case, equity considers the grantee's real interest as "valueless."

In Palmiter v. Action, Inc., 548 F. Supp. 1166 (N.D. Ind. 1982), aff'd 733 F.2d 124 (7th Cir. 1984), the district court held that the federal government retains an equitable, reversionary interest in contractual rights that were obtained pursuant to federal grant monies given to private, non-profit organizations when such funds can no longer be used for authorized federal grant purposes (such

17

as the HeadStart program).  Plaintiff was a judgment creditor who wanted to garnish grant funds and grantee was an Indiana non-profit funded by direct and indirect federal grants.  The court refused, finding:  "The district court could properly conclude that the United States' continuing interest in grant funds met the criteria for creation of an equitable lien."  Id., 548 F. Supp. at 1171 (citations omitted).  Further, it found:  "[T]he equitable lien existing on those funds in favor of the United States gives rise to, in effect, a trust relationship between the federal government and [the grantee]." Id., 548 F. Supp. at 1172.

Importantly, the Palmiter court relied heavily on public policy and the unique situation of the United States.  If a trust relationship between the grantee and the federal government arose, sovereign immunity issues had to be considered, as the federal government was a real party in interest.  As well, the court noted that, if creditors were allowed to dismantle assets that "Congress has set aside for specific and laudable goals" in order to satisfy a judgment, the ability of such projects to continue would be impaired and the "willingness of our legislative assebl ies to continue to take an active part in attempting to redress" problems in society would be "seriously undercut". Id., 548 F. Supp at 1171.

The FAA administers a grant program just as the agencies in these cases do – to advance certain federal interests that Congress has deemed worthy of support.  Although creditors' redress was severely restricted in both of these cases, the respective courts held fast that the equitable lien arose by virtue of the grant, its forward looking oversight and significant public policy interests. Here, the FAA has demonstrated all of these elements with respect to its grant to MIDA and Delaware County.

**D.     Oklahoma law is particularly inclined to grant an equitable lien where the one claiming the lien provided the purchase money for the property in question.**

American Jurisprudence summarizes the law:

> One function of an implied equitable lien is to enforce a purchase money obligation that is not otherwise secured.  An equitable lien may arise in favor of one who advances money to pay the purchase price of real or personal property under an agreement, or circumstances showing an intention, that the property shall stand as security for the advancement

American Jurisprudence (Second Edition) Liens, Section II(C)(4) at § 49 (footnotes omitted).  In support of that proposition, a number of cases are cited, including <u>Bredy v. Cantrell</u>, 234 P.2d 381 (Okla. 1951).  In <u>Bredy</u>, the Plaintiff loaned money to a couple to purchase a house.  Plaintiff was to live with the couple in the home and receive periodic repayment.  When Plaintiff was eventually disgruntled and forced to leave, she brought an action to impress a purchase-money equitable lien on the property.   The Oklahoma Supreme Court held that even though there was no written agreement that the land should stand as security for repayment of purchase-money advanced by the plaintiff, the equity of the situation required that plaintiff be given an equitable lien on premises to secure balance due on purchase-money advanced to the defendants.  <u>Id.</u>, 234 P.2d at 383.

Likewise, there is no dispute but that the Grants of Oklahoma and the United States made it possible for MIDA to purchase the land in question.  Unlike the oral agreements which were sufficient to impress an equitable lien in <u>Bredy</u>, a written Grant Agreement was signed concerning the dedicated use of the land and particular methods by which the land could be utilized, encumbered or transferred.

19

**E.     An equitable lien relates back in time to the date it was created between two parties.  Consequently, the FAA's lien is superior to any judgment lien of MAAN.**

Specifically, American Jurisprudence on Judgments teaches:

A judgment lien on all real estate of the judgment debtor does not prevail over prior equitable claims on specific property of the debtor; to the contrary, the judgment lien is subject to all equities existing against the property in favor of third persons.  The existing equity need not be of record and lack of notice to the judgment creditor is immaterial.  The rationale for that preference is that a judgment lien holder is not in any sense an innocent purchaser.  If a lien fails to attach, the judgment lien holder loses nothing.  His judgment still remains unimpaired in its full amount.

American Jurisprudence Judgments (Second Edition, database updated May 2005), at Part V. Lien of Judgment or Execution, § 396 Equitable interests (footnotes and citation to numerous cases omitted).

Here, all parties, including MAAN, were well aware of the equitable interest of the United States.  MAAN executed on this land with full knowledge of the Grant Agreement and the restrictions therein.  As a matter of fact, they had earlier agreed to be subject to it – put that agreement in writing and brought it into this Court to ask for enforcement.  One who takes with notice of an equity takes subject to it.  Southwest Pipe Line Co. v. Empire Natural Gas Co., 33 F.2d 248 (8th Cir (Okla.) 1929).  Consequently, the General Execution Order and the Notice of Sale proposed by MAAN improperly omitted recognition of the United States' equitable rights in the subject property.

**F.     The Grant Agreement represents a covenant enforceable against all parties, which should be recognized by this Court.**

Oklahoma case law provides that covenants will be enforceable whether or not they run with the land when purchasers have actual or constructive notice of the restrictions or covenants.  In Blackard v. Good, 248 P.2d 596 (Okla. 1952), the plaintiffs had refused to sell the defendants land

20

to build an animal hospital.  The defendants later purchased the land through an agent, with knowledge the original deed from the plaintiffs contained restrictions on building, and began to build an animal hospital.  Plaintiffs asked for injunctive relief, which the trial court denied.  Oklahoma's Supreme Court reversed, holding:

> There is no question that a personal covenant or agreement affecting lands will be held valid and binding in equity on a purchaser taking the estate with notice, and it is immaterial that the agreement may not be a covenant which runs with the land.

Id., 248 P.2d at 598.

In Blackard, the primary question was whether the contract of which the defendants had actual notice contained a restriction against the use of the land – even though the defendants were not actually parties to the contract.  Id., 248 P.2d at 598-599.  In Blackard, and other cases enforcing the above rule, the question was whether those taking land with notice of a covenant relating specifically to that land should be restricted in the use of the land purchased.  See also, Frey v. Poynor, 369 P.2d 168 (Okla. 1962); Morton v. Clearview Homes, Inc., 324 P.2d 543 (Okla. 1958); and Southwest Petroleum Co. v. Logan, 71 P.2d 759 (Okla. 1937).  In Oklahoma, notice of the restrictive covenant is sufficient for enforcement.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney


/s/Cathryn D. McClanahan
CATHRYN D. MCCLANAHAN, OBA #14853
United States Assistant Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119-1029
Telephone (918) 382-2700
Facsimile (918) 560-7939

21

OF COUNSEL:
ERIC E. ANDERSON
LORETTA BARLOW
Office of General Counsel
Federal Aviation Administration
2601 Meacham Blvd., Room 663
Forth Worth, Texas 76137
Telephone (817) 222-5078

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2005, I electronically transmitted the foregoing UNITED STATES' HEARING BRIEF to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kenneth M. Smith
ksmith@riggsabney.com
*Attorney for Mid-America Ag Network, Inc.*

Robert P. Skeith
Rskeith@riggsabney.com
*Attorney for Mid-America Ag Network, Inc.*

Kevin Behrens
kevin_behrens@oag.state.ok.us
*Attorney for Oklahoma Aeronautics Commission and State of Oklahoma*

Evan B. Gatewood
egatewood@hmglawyers.com
*Attorney for Brawner Construction Co.*

I hereby certify that on August 4, 2005, I served the foregoing UNITED STATES' HEARING BRIEF by mail, proper postage paid, on the following who are not registered participants of the ECF System:

Michael C. Turpen
Riggs, Abney, Neal, Turpen, Orbison & Lewis
Paragon Building, Suite 101
5801 Broadway Extension
Oklahoma City, Oklahoma 73118-7489
*Attorney for Mid-America Ag Network, Inc.*

David L. Crutchfield
56558 East Highway 125
Monkey Island, Oklahoma 74331
*Attorney for Monkey Island Development Authority*

/s/Carie McWilliams
CARIE MCWILLIAMS
Legal Assistant

23