IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MID-AMERICA AG NETWORK, INC., ) | |
| a Kansas Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No. 02-CV-105-EA-PJC |
| ) | |
| MONKEY ISLAND DEVELOPMENT ) | |
| AUTHORITY, an Oklahoma Public Trust ) | |
| ) | |
| Defendants. ) | |

### AMENDED REPLY OF INTERVENERS PAUL STATEN AND ISLAND ENTERPRISES, INC TO RESPONSE OF THE UNITED STATES TO OBJECTIONS TO ORDER OF MAGISTRATE

A.  <u>Overview of Central Issues in the Case</u>

1.  <u>Interests in the Property</u>

In order to concisely present the issues in this case, the starting point is to identify the nature of the interests of each party to the property subject to the General Execution and Order of Sale:

a.  <u>Monkey Island Development Authority</u>

Monkey Island Development Authority is a public trust established pursuant to state statute, see 60 Okl. §176 et. seq.   As a public trust, MIDA exists independently of any governmental entity (60 Okl. Stat. §176.1).   Such public trust is expressly authorized to acquire and hold real estate (60 Okl. Stat. §178.9).   Acts of the trustees which give rise to claims for liability can only be satisfied from the trust estate (60 Okl. Stat. §179) and no trust can be terminated while there exists outstanding contractual obligations which might become the obligation of the beneficiary (60 Okl Stat.§180).

At the time of the execution , MIDA  was the sole owner of the property in question.  As part of it's grant to MIDA, FAA required MIDA to obtain "fee simple" title to the property in question. (Exhibit 2 to Staten's Motion to Intervene, at Part II, Section C at pg 10 of exhibit).

A review of the General Execution and Order of Sale (Dkt 71, also attached as Exhibit 9 to

-1-

Staten's Motion to Interve] described in detail these tracts which were held by MIDA.

It is clear that by deed recorded May 18, 2005 MIDA transferred to "Island Air, LLC" the property in question.

b.      Mid-America AG Network

Mid-America AG Network is a judgment creditor. It's judgments were recorded as required by statute on October 7, 2003 and September 30, 2004 (See Exhibit 1 to this brief). The effect of recording these judgment liens as expressly provided for by 12 Okl. Stat. §706:

> B. Creation of a Lien: A judgment to which this section applies shall be a lien on the real estate of the judgment debtor within a county only from and after a Statement of Judgment made by the judgment creditor or the judgment creditor's attorney, substantially in the form prescribed by the Administrative Director of the Courts, has been filed in the office of the county clerk in that county:
>
> * * *
>
> 2.    A lien created pursuant to this section shall affect and attach to all real property, including the homestead, of judgment debtors whose names appear in the Statement of Judgment; however judgment liens on a homestead are exempt from forced sale pursuant to Section 1 of Title 31 of Oklahoma Statutes and Section 2 of Article XII of the Oklahoma Constitution.

Accordingly, upon filing the judgment liens in this case, Mid-America AG Network's judgment attached to all real property of MIDA.

c.      Brawner Construction

Although the undersigned does not have a copy of the "Statement of Judgment" of Brawner Construction, it is submitted, upon information and belief that such a "Statement of Judgment has been filed and, therefore, they hold an interest in the real estate as a judgment creditor.

d.      Paul Staten and Island Enterprises

As in the case of the Mid-America AG Network judgments, Paul Staten and Island Enterprises filed their statements of judgments on March 18, 29th and May 5th, 2005 (Exhibit 15, Staten's Motion to Intervene). As with the other judgment creditors, Staten and Island Enterprises' interest in the real

estate, i.e. the judgment lien, was perfected pursuant to 12 Okl. Stat. §706.

e. Federal Aviation Administration

It is clear that the original purchase of real estate by MIDA was made possible by a grant from the FAA in the amount of $652,500 while other parties, including the OAC and private interests raised additional funds (Exhibit 2 to Staten's Motion to Intervene).   However, it is equally clear and undisputed, that the FAA did not retain an interest in the purchased real estate.

FAA asserted an equitable interest  that existed by virtue of the mere existence of grant provisions.  In response, Staten, as well as Mid-America AG Network, cited black letter law that such an equitable lien could not be created merely be arguments of "equity".  Rather, any such "equitable lien" would have to be created by contract or law;   Any intention to create such an equitable lien would have to be clear from the instrument,    Wright v. Ellison, 68 U.S. 16, 22, 17 L.Ed. 555, 557, 1 Wall. 16 (1864); Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453 (1897);  National Cash Register Co v. Stockyards Cash Market, 228 P.150 (Okl. 1924*);   Young v. J.A. Young Machine & Supply Co., 224 P.2d 971, 973-74 (Okla. 1950)  Taylor v. B.B&G Oil Co, 249 P.2d 430 (Okl 1952);  Phoenix Mutual Life Insurance Co. v. Harden, 596 P.2d 888 (Okl. 1979)  Neil Acquisition, LLC v. Wingrod Investment Corp., 932 P.2d 1100 (Okl. 1996) and 42 Okl. Stat. §6, 51 *American Jurisprudence 2d* Liens §41.

The FAA urged that a lien could be created by the implication of the grant provisions. However, the undersigned pointed out that  neither the statute, the legislative history, nor the provisions of the grant agreement supported the imposition of such a lien.   Indeed, the undersigned urged that in order for such a lien to be created, this court would have to invalidate the express provisions of 60 Okl. Stat. §179-180 in violation of the 10th Amendment.

The FAA has not identified any statutory provision which expressly reserves to the FAA any interest in real estate. To the contrary, 49 U.S.C. §47107(C)(2)(B) merely requires that airport property, when voluntarily alienated, be sold for fair market value.   The marshal's sale is not a voluntary

alienation but, rather, a forced judicial transfer. In addition, the provisions for execution require appraisal and public sale. It is clear that a marshal's sale meets this requirement.

In light of the absence of any statutory provision for retention of any lien on real estate purchased with federal grant money, the undersigned cited black letter law that this court should not effectively amend the statute to recognize an un-enacted real estate lien. Where Congress has enacted specific language in one section of a statute, but omits it in another, it is presumed that Congress acts intentionally and purposefully and the judiciary should not, *sua sponte*, amend that legislation, c.f. Keene Corp v. U.S. 508 U.S. 200, 208, 113 S.Ct. 2035, 2040 124 L.Ed.2d 118 , 128 (1993) Russello v. United States, 464 U.S. 16, 23, 78 L. Ed. 2d 17, 104 S. Ct. 296 (1983) . Board of Education of Westside County School v. Mergens, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990)

With respect to the regulations, the undersigned set forth in detail existing regulations which provide for retention of a real estate interest. The undersigned argued that these provisions clearly establish that when the government wishes to retain an interest in the real estate, it has, in other contexts, clearly directed how such interests are to be documented (see footnote 6 to Staten's Motion to Intervene). The regulations applicable to MIDA's grant, does not make any provision of retention of a real estate interest.

The FAA cites the provisions of 49 U.S.C. §18.31 in support of it's argument that grant provisions limit the transfer of title. In point of fact, this provision expressly recognizes title in the grantee. Specifically, §18.31 states quite clearly:

§18.31   Real Property:

(a)   Title.  Subject to the obligations and conditions set forth in this section, title to real property acquired under a grant or subgrant will vest upon **acquisition in the grantee or subgrantee respectively**

Thus, title to the property rests in the grantee, i.e. MIDA. The provisions of this regulation do not retain any ownership interest by the FAA. To the contrary it merely provides that the property will

be used for the original purpose "as long as needed" for that purpose . If not needed for that purpose[1], this regulation provides for voluntary sale with the FAA receiving a pro rata portion of the sale proceeds.

Finally, the undersigned pointed out that in the FAA's own instructions 5091.6A, para. 8-2 (Ex. 22 to Staten's Motion to Intervene), the agency requires any right of reversions to be expressly stated. Indeed, the 2004 grant clearly demonstrates that when the agency wishes to retain an interest in the real estate, or an enforceable covenant, they have a procedure for doing so, see 49 C.F.R. §21.7(2).

f.   Oklahoma Aeronautical Commission

The OAC has repeatedly "piggy-backed" upon the argument made by the FAA. However, it should be noted that there claim can only be predicated upon the concept of an equitable lien. Yet there is no indication in any statute, regulation, or grant provision which supports such a claim. To the contrary, the specific provisions of 60 Okl. Stat. §§179-180, matters of state law, make it clear that the airport property is subject to execution for purposes of payment of MIDA debts.

2.   Procedures for Addressing Issues Relating to the Interest in Property

The normal manner for protection of persons claiming an interest in real property are state statutes governing writs of execution. That is, pursuant to 12 Okl. Stat. §733 provides that nonexempt lands, tenements, goods and chattels "shall be subject to payment of debts and shall be liable for execution and sold as provided" by law.   Further, pursuant to 12 Okl. Stat. §734 provides:

> All real estate not bound by the lien of the judgment, as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution.

Thus, the perfection of a judgment lien binds the real estate to that lien. Similarly, when real estate is seized by execution, that real estate is bound from the time of execution. Therefore, once the lien is

---

[1]   The undersigned would submit that pursuant to 49 U.S.C. §47107(c)(1)(A), an airport is no longer needed for that purpose "if it no longer contributes to financial self sufficiency", i.e. where, as here, it is financially insolvent because all it's revenues would be subject to execution.

perfected and/or execution is obtained, the property is subject to sale for satisfaction of debts, see e.g. 30 Am. Jur 2d *Executions and Enforcement of Judgments*, §463.

Once the property is seized and subjected to an execution and sale, the acts leading up to confirmation are merely ministerial, see Bartlett Mortgage Co v. Morrison, 81 P.2d 318, 321 (Okl. 1938), 30 Am Jur 2d *Executions and Enforcement of Judgments*, §457 ("the court usually has no control over an execution sale beyond setting it aside for noncompliance with the directions of the statute].

B.  Specific Arguments Raised by Intervener FAA

1.  The **FAA's Assertion That "[T]he Fact Mida No Longer Purports to Hold Any Interest in the Property Which Is to Be Sold to Satisfy MIDA's Debt Justifies Vacating the Sale" Is Incorrect**

FAA appears to make two assertions: (a) the right of execution applies only to that which the debtor owns and, therefore, a subsequent transfer of title defeats the execution; and (b) the Writ of Execution is "in personam" and not "in rem".  Neither argument is well founded.

First, it is true that a sheriff's sale can only transfer what property the debtor owns. However, the FAA ignores the effect of the judgment lien statute, 12 Okl. St. §706 and the execution statute, 12 Okl. Stat. §734.  The former expressly attaches the judgment lien to any real estate owned by the debtor.  Upon issuance of a writ of execution, 12 Okl Stat. §734, provides the real estate, not bound by §706 becomes bound from the time of the execution.  Thus, the filing of a judgment lien creates an interest in specific real estate from that date. The filing of the writ of execution creates an interest in real estate for any claims subject to the writ of execution.  Subsequent transfers of title cannot defeat the right to proceed with execution,  30 Am. Jur 2d *Executions and Enforcement of Judgments*, §463,  Upset Sale, Tax Claim Bureau of Berks County v. Estate of Schumo, 379 A.2d 940, 943-944 (Pa. 1984), Franklin v. Spencer, 789 P.2d 643 (Or. 1990); Dieden v. Schmidt, 104 Cal. App. 4th 645 (Calif CA 2002); Harbin v. Brooks, 25 B.R. 703, 706 (W.D.Tenn, Eastern Div, 1982).

In Sarkeys v. Russell, 309 P.2d 723, 726 (Okl. 1957), cited by the FAA, a wife held title to

property conveyed to her by her husband in 1948. In 1954, a judgment was entered against the husband and execution issued upon the property in question. The property was sold to defendant Sarkeys at the marshal's sale. Based upon this fact situation, it was held that a purchaser can only take what interest a judgment debtor may have in the property. Thus, Sarkeys could not take title to the property since the husband, did not own the property. Nothing in Sarkeys addresses the situation where title is transferred after judgment liens and a writ of execution is issued. In that circumstance, the interest of the creditor attaches to the real estate owned by the debtor at the time.

The FAA's second argument appears to be that the writ of execution entered in the case is, by nature, *in personam* and, therefore, cannot follow the real estate upon its transfer. This argument is simply wrong. The express language of both §§706 and 734 provide that the interests of the creditor attaches to the real estate  The cases cited by the FAA do not address a post lien execution. In Freeman v. Alderson, 119 U.S. 185, 190 (1886) a party to a litigation sought to execute upon certain property. The court noted that the judgment for costs was in personam not in rem. There was no discussion of an any attempt under law to file the requisite lien so that the judgment would attach to the real estate. In First National Bank and Trust of Vinita v. Kissee, 869 P.2d 502, 505 (Okl. 1993) the issue was whether it was appropriate to tax costs and attorney fees in personam against attorneys. There was no issue involved as to collection upon a  judgment lien.

In McNeal v. Baker, 274 P. 655 (Okl. 1928), actions to foreclose a mortgage was recognized as *in rem*. Thereafter, the deficiency was an *in personam* judgment. The court recognized that this deficiency could then be collected as provided by law, i.e, execution upon specific property. Finally, T.J.K. v. N.B., 237 So.2nd 592, 594 (Fla. App. 1970) merely describes the differences between *in rem* and *in personam* jurisdiction.

When the Mid-America AG Network judgment for attorney fees were entered, they were *in personam*. Mid-America could attach that debt to real estate (and thus render it *in rem*) by either

-7-

perfecting a judgment lien or obtaining an Order of Execution. In this case, both were done.

      2.      **The FAA's Assertion That "Staten's Proposal to Simply Draft a New Notice of Sale Would Conflict with the Court's General Execution Order Is Improper" Is Incorrect**.

FAA next argues that since the property was, after the execution, transferred, that defeats the order of execution. In this regard, the FAA asserts that a "purchaser at the court ordered sale can only purchase that which the court has ordered to be sold". The FAA fails to note, however, that the order of Execution directs the sale of the specific property in question.

The case cited by the FAA, Settles v. Atkinson T&S.F.Ry. Co, 318 P.2d 867, 869 (Okl. 1957) was a mortgage foreclosure action. The decision in Settles merely stands for the proposition that an in rem judgment which describes the property subject to sale describes that which is transferred upon completion of the sale. The portion of the property reserved by the court was not subject to sale.

In the current case, the "in rem" judgment, according to state statute, is the description of the property subject to sale in the writ of execution. At the time of the writ of execution this property was owned by MIDA subject only to certain liens, leases and mortgages. The subsequent transfer of title did not in any way negate the order of sale for the described property.

The FAA asserts that 12 Okl. Stat. §755 and Riddle v. Bishop, 79 P.2d 801, 803 (1938) stand for the proposition that a claim that a judgment debtor does not own the property provides a basis for vacating the execution. However, this misstates the nature of a levy and execution.

In terms of the writ of execution, the FAA should distinguish between the time of "levy" and the time of sale of the property. Pursuant to 12 Okl. Stat. §755, upon order of a court, is directed to "levy" upon the property specifically identified in the order. This levy is obtained by service of the General Execution and Order of Sale. This is a different point in time than the time for the "sale".

In this case, the levy was completed upon issuance of the writ of execution. Upon return of service, the levy was complete. The records in this case show that such levy was returned on December

23, 2004 (See Dkt #71-78).   Thus, at the time of levy, it was clear that MIDA was the sole owner of the property.  Having obtained jurisdiction over the property, a subsequent sale would not defeat the writ of execution and order of sale.

> 3. **The FAA's Assertion That "Mid-America Never Created or Attached Any Lien on Federal Airport Property" Is Incorrect.**

The FAA  asserts that Mid-America never created a lien on the airport property.  To the extent that such an argument suggests Mid-America has not perfected a judgment lien under 12 Okl. Stat. §706, it is belied by Exhibits 1 and 2 (statement of judgments pursuant to §706).   To the extent that such an argument suggests Mid-America has not properly obtained a General Execution and Order of Sale, it is belied by that very order [Dkt 71, also attached as Exhibit 9 to Staten's Motion to Intervene]

For the first time the FAA, after innumerable briefs, appears to assert that the Airport is federal property.    In making this argument, the FAA cites  Neukirchen v. Wood County Head Start Inc., 53 F.3d 809, 811 (7th Cir. 1995).    In Neukirchen the grantee had received money from the Head Start program and purchased certain personal items worth less than $1,000.00.  A judgment creditor sought to execute upon the personal property of the grantee.    In denying the judgment creditor the right to execute upon this personal property, the Seventh Circuit stated:

> It is clear in this circuit that property purchased with federal grant funds constitutes federal property. **In re Joliet-Will County Community Action Agency, 847 F.2d 430 (7th Cir. 1988)** (holding that property purchased with federal grant funds did not belong  to Joliet-Will but rather belonged to the federal government).

53 F.3d at 811-812 (emphasis added).    Based upon this discussion of government ownership of personal property, the FAA seeks to extend this "federal ownership" to real estate.   Such an approach would not only be unprecedented, it would ask this court to ignore the authority upon which Neukirchen.

In re Joliet Will County Community Action Agency, 847 F.2d 430, 432-433 (7th Cir. 1988) the Seventh Circuit explained the line of cases

-9-

>A number of cases hold that federal funds in the hands of a grantee remain the property of the federal government unless and until expended in accordance with the terms of the grant.

Clearly, these decisions are limited to those cases in which money or personal property retain their identity of government property.

The FAA cites no case which extends a federal property interest in real estate purchased with grant funds. To the contrary, the sole case which addresses this issue specifically rejects the FAA's argument. See Gaffney v. United States Department of Transportation (In re Premier Airways, Inc) 303 B.R. 295 (Bankr. W.D.N.Y. 2003) affirmed at 2004 Bankr. LEXIS 5, 51 Collier Bankr Cas 2nd 752, 42 Bankr Ct. Dec 93 (Bankr W.D.N.Y. 2004), in which the FAA argued, as it argues here, that the In re Jolliet-Will County Community Action line of authority recognized a reserved interest in real estate purchased with grant monies. In response to this argument, the Bankruptcy Court ruled:

>This court has no fundamental disagreement with the decision in In re Joliet-Will Community Action Agency, or with any of the other cases the debtor cites in further support of that holding [citations omitted]. Notably, however, all of these cases involve claims to personal property. Consequently, these cases do not consider the more comprehensive interests of a trustee with regard to real estate. In the present instance, the trustee holds an interest in the expansion properties that is superior to that of the FAA.

Thus, the undersigned would submit that the cases cited by the FAA are inapposite for the following reasons: (a) it involves personal property rather than real estate; (b) it involves the Head Start program which has unique regulatory requirements; and (c) it deals with a situation where grant funds have not lost their identity as government funds.

(a) <u>Overview of Federal Grant Cases</u>

The genesis of the In re Jolliet line of cases is Buchanan v. Alexander, 45 U.S. 20, 11 L.Ed. 857, 4 HOW 20 (1845) where a paymaster had wages he was holding for seaman subjected to a garnishment proceeding. The Supreme Court stated:

>So long as money remains in the hands of the disbursing officer, it is as much money of the United States, as if it had not been drawn from the treasury. Until paid over by the agent of the government to the person entitled to it, the fund cannot, in any legal sense, be considered a part of his effects. The purser is not the debtor of the seaman.

-10-

For the next hundred thirty years, this rule was applied solely to government money being held for a government purpose, see Wright v. Wright 1 P.2d 668 (Okl. 1931); Haskins Bros v. Mogenthau, 85 F.2d 677 (D.C. Cir. 1936), Landman v. DuBois, 133 P.2d 193 (Okl. 1942); United States v. Krakover, 377 F.2d 104 (10th Cir. 1967); Brockelman v. Brockelman 478 F.Supp. 141 (D.Ks. 1979).  See also the following cases which also dealt with government  Palmiteer v. Action Inc., 733 F.2d 1244 (7th Cir. 1984); State of Arizona v. Bowsher, 935 F.2d 332 (D.C.Cir. 1991); and Westmoreland Human Opportunities Inc. V. Walsh, 246 F.3d 233 (3rd Cir. 2001)  HUD v. Capolino Construction, 2001 U.S. Dist LEXIS 5825 (No. 01-CIV-390 (JGK), May 7, 2001)

These "money cases" were the basis for the 5th Circuit extending the rule to "personal property" purchased with federal funds, Henry v. First National Bank of Clarksdale, 595 F.2d 291-308, 309 (5th Cir. 1979) cert. denied sub nom Claiborne Hardware Company v. Henry 444 U.S. 1074 (1979), state garnishment proceedings against bank accounts of a local Head Start program were garnished.   The 5th Circuit explained its rationale as follows:

> The Act carefully delineates the purposes for which grant funds may be expended. Although MAP is a private, nonprofit corporation and not a federal agency, extensive and detailed regulations govern its expenditure of federal funds in order to ensure the use of grant funds for approved purposes. See 45 C.F.R. Part 74 (1977). **The United States retains a reversionary interest in all grant funds** and in all property purchased with such funds that can no longer be used for the narrow purposes specified in the Act and regulations. Id. A Headstart grantee must **undergo an annual audit to determine whether it has spent grant funds in a fashion consistent with** "applicable laws, regulations and directives." 45 C.F.R. § 1301.3-3(a).

This detailed supervision, including the retention of a revision interest and annual audits of the use of funds was recognized as a basis for extending governmental interest over personal property in another Head Start case, Madison County Economic Opportunity Commission v. Madison County Economic Opportunity Commission, 53 B.R. 541 (Bankr. S.D. Ill. 1985), In re Joliet Will County Community Action Agency, 847 F.2d 430, 432-433 (7th Cir. 1988) ; Southwest Citizens Organization for Poverty Elimination v. Marchand 91 B.R. 278 (Bankr. D.N.J. 1988);  Neukirchen v. Wood County Head Start Inc., 53 F.3d 809, 811 (7th Cir. 1995).

-11-

Thus in these cases in which "government ownership" was extended beyond money to personal property, there existed a significant ongoing government oversight. In each of these cases there existed direct oversight on an ongoing basis including annual audits and a reversion interest in the property.

In contrast, cases which did not involve this Head Start type of detailed oversight did not extend federal ownership beyond the existing grant funds. Thus, in <u>Transit Express v. Ettinger</u>, 2000 U.S. Dist LEXIS 5466 (No. 99-C-3415, March 17, 2000, N.D. Ill.) affirmed 246 F.3d 1018 (7th Cir. 2001), an injured plaintiff sought to establish federal jurisdiction on the basis that grant funds were used to purchase vehicles. The court rejected any claim to federal ownership of these trucks by virtue of mere provision of grant monies to purchase the trucks.

    (b)    <u>Real Estate Cases</u>

As noted above, in <u>Gaffney v. United States Department of Transportation (In re Premier Airways, Inc)</u> 303 B.R. 295 (Bankr. W.D.N.Y. 2003) affirmed at 2004 Bankr. LEXIS 5, 51 Collier Bankr Cas 2nd 752, 42 Bankr Ct. Dec 93 (Bankr W.D.N.Y. 2004) it was recognized that federal ownership could not be extended to real estate purchases. The undersigned would submit that <u>Gaffney</u> is the only case directly addressing real estate purchases with grant funds.

It must be noted that there exists a fundamental difference between real estate purchases and personal property. First, the means for recording and preserving interests in real estate is an essential element in each state's statutory and common law. Personal property, unlike real estate, does not require the detailed perfection of interests required of real estate. Indeed, even the federal government recognizes a fundamental difference with real estate. That is, the provisions for enforcement of government grants (FAA Order 5091.6A, para 8-2, Ex. 22) expressly requires explicit identification of a government property interest:

> **8-2 RIGHT TO REVERT.** The right to revert airport property and revest title in the United States **must be specified in an instrument of conveyance from the Federal Government**

Unlike personal property, if the government seeks a reversion interest in real property, it must be

-12-

contained in the deed transferring title (see footnote 6 to Staten's Motion to Intervene and Response to Objections).  Further, 49 U.S.C. §47153 (empowers the government to add covenants to property conveyances.

> On request of the Secretary of Transportation or the Secretary of a military department, a department, agency, or instrumentality of the executive branch of the United States Government or a wholly owned Government corporation may . . . .**add another term if the appropriate Secretary decides it is necessary to protect or advance the interests of the United States in civil aviation or for national defense.** [Emphasis added]

In addition, the FAA retains authorization for inclusion of such grant assurances on the property deed is authorized by  49 CFR §21.7(2).   The fact that they choose not to preserve such rights cannot be ignored in determining relative property rights.

Furthermore, when real estate is purchased with grant funds, the federal government is not the sole source of such funds.  Both the state and private interests provide such monies.  The law of the State of Oklahoma provides a vehicle by which any property interest claimed and be perfected.  The government need only include a covenant with their interest in the deed and insure that covenant is properly recorded.  Protection of detailed personal property rights do not exist.

(C)     Unique Nature of Head Start Program

As noted above, the majority of federal ownership of personal property cases arise under the Head Start program.  The detailed control of such programs include, as noted above, annual audits and rights of reversion of property purchased with federal grant money.  This is significant because the Head Start program, unlike the FAA grants, expressly retain ownership of property   In this regard, 45 C.F.R. §74.33 provides that "title of federally owned property remains vested in the Federal Government"  and requires an annual inventory of federally owned property[2].  No such requirement

---

[2]     The FAA asserts that the Head Start Program "mirrors" the DOT regulations.  The key elements of control in the Head Start Program, as noted in the Henry case involved reversion interests and annual audits to insure proper use of funds.  With the FAA, the use of funds is supervised only until the project in question is completed, i.e. the airport was purchased and/or the runway was completed.

exists for FAA grants. Indeed, prior to the most recent brief, the FAA as not previously asserted the airport was their property.

Indeed, it must be noted that had the FAA been supervising the operation of MIDA with any degree of control, the actions by MIDA which led to the judgment liens would have been avoided. That is, had the FAA exercised the type of direct supervision that exists in a Head Start Program, the FAA would have moved to insure payment of judgments (or cessation of wrongful acts) before they were ever the subject of a writ of execution.

### (d)　Funds Have Been Expended

As noted above, the basic black letter law with respect to government funds is that federal grant monies remain the property of the United States until they are expended for the purpose granted. In this case, the federal grant money extended to MIDA was used to purchase the airport and to develop the runway. This has completed the purpose for which the money was granted. It is submitted that having expended this money as required by the grant, this terminates the federal government's right to assert any lien or interest over the property. Since the purchase of this property, MIDA as well as other parties have maintained and improved the airport property. The commitment of these individuals to improve this property adds weight to the argument that the FAA's interest in the grant funds was extinguished when the money was spent in accordance with the grant.

### 4.　**The FAA's assertion that "Staten Ignores Explicit Federal Regulations and Grant Assurances which Limit the Disposition of the Airport" Is Incorrect**

The FAA next asserts that Staten ignores the provisions of 49 U.S.C. §18.31. Section 18.31(a) expressly recognizes title of real estate to the grantee and do not provide for a residual interest.

Certainly an argument could be made that this language precludes a voluntary act (assuming the continued financial viability of the airport). However, the matter presently before this court is an involuntary transfer of title by operation of law. That is, these regulations merely restrict the power of

the grantee's voluntary actions. They do not presume to preclude the operation of state law which requires collection of Trust debts to be solely against the Trust property.[3]

The FAA also asserts the issue of preemption. Specifically, this places the FAA directly in line with urging this court to determine that state law providing for judicial enforcement is barred by the doctrine of preemption. However, the doctrine of preemption can only apply if the asserted power is within the scope of the federal government. In prior briefs filed in this case, the undersigned has urged that the FAA's actions in this regard are subject to the limitations of the Spending Clause (as implemented by the Necessary and Proper Clause). The limitation of the Spending Clause was set forth in Barnes v. Gorman, 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002), is that any such limitation on state power must be expressly stated. The FAA cannot point to any provision which expressly places the sponsors, or contracting parties, on notice that they asserted ownership of the airport and/or that judicial remedies for collection of debt would not be available.

5.     **The FAA incorrectly Asserts that Staten's Citation of Reversion Interests Are Irrelevant**

Finally, the FAA asserts that Staten's citation to regulations relating to federal agencies retaining reversion interests are irrelevant. Staten does not assert these regulations are controlling on this case. Rather, they are cited to demonstrate that where the federal government seeks to retain an interest in real property, they do so[4]

---

[3] The FAA notes that Mid America AG Network was a party to a contract that incorporated by reference grant assurances. However, as discussed above, the incorporation by reference of those grant assurances cannot create a barrier to a judicially authorized marshal's sale. While such grant assurances might, under proper circumstances, by argued to bar voluntary transfers, no such covenant can preclude a judgment creditor who is a party to such a contract from taking the only action available to enforce his judgment.

[4] The FAA also notes that neither MIDA nor Mid-America AG filed any objections. The undersigned would merely note that the reason Staten and Island Enterprises have taken the lead herein is because their judgment debts are clearly the most significant liens involved in the case.

By: /s/   Carl Hughes
Carl Hughes, OBA# 4463
HUGHES & GOODWIN
5801 N. Broadway, Suite 302
Oklahoma City, OK 73118
(405) 848-0111
(405) 848-3507 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2005, I electronically transmitted the foregoing to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kenneth Smith
Riggs Abney Neal Turpen Orbison & Lewis
502 W 6th St
Tulsa, OK 74119
918-587-3161
Fax: 918-743-0546
Email: ksmith@riggsabney.com

**Robert P Skeith**
Riggs Abney Neal Turpen Orbison & Lewis (Tulsa-502)
502 W 6th St
Tulsa, OK 74119
918-587-3161
Fax: 918-587-2150
Email: rskeith@riggsabney.com

**Evan Blake Gatewood**
Hayes Magrini & Gatewood
1220 N Walker
Oklahoma City, OK 73146-0140
405-235-9922
Fax: 405-235-6611
Email: egatewood@hmglawyers.com

John Kevin Behrens
Office of the Attorney General (OKC-4545)
4545 N LINCOLN BLVD STE 260
OKLAHOMA CITY, OK 73105
405-521-4274
Fax: 405-528-1867
Email: kevin_behrens@oag.state.ok.us

**Cathryn Dawn McClanahan**
Assistant U.S. Attorney
cathy.mcclanahan@usdoj.gov carie.s.mcwilliams@usdoj.gov;santita.ogren@usdoj.gov

I hereby certify that on October 3, 2005 I served the foregoing document by first class mail, proper postage paid, on the following whose appearance does not reflect that they are registered participants of the ECF system:


**David L Crutchfield**
56558 E Hwy 125
Monkey Island, OK 74331


                                        /s/ Carl Hughes